# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HOLLY WETHINGTON and MAKENZIE WETHINGTON, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. CIV-14-899-D ) |
| ROBERT SWAINSON, d/b/a/ PEGASUS AIRSPORT CENTER, | ) ) ) ) |
| Defendant. | ) |

## ORDER

The determinative issue before the Court concerns the authority of a parent to bind their minor child to an exculpatory agreement, which functions to preclude a defendant's liability for negligence, before an injury has even occurred. Holly and Makenzie Wethington, mother and daughter ("Plaintiffs"), bring this action against Defendant Robert Swainson, d/b/a/ Pegasus Airsport Center, for injuries suffered by Makenzie while skydiving.[1] Under theories of negligence and breach of contract, Plaintiffs contend Defendant (1) provided inadequate training to Makenzie in preparation for the parachute jump, (2) selected a person to provide radio assistance who had no prior experience, (3) provided old equipment that malfunctioned during Makenzie's jump, and (4) permitted Makenzie to use a parachute she was ill-prepared to use and which was inappropriate for her skill level. Before the Court is Defendant's Motion for Summary Judgment [Doc. No.

---

[1] At the time this action was brought, Makenzie was a minor. She has since become eighteen and will thus be referenced by name.

24], to which Plaintiffs have filed their response in opposition [Doc. No. 30]. The matter is fully briefed and at issue.

## BACKGROUND

The following facts are undisputed. On January 24, 2014, Makenzie, who was then sixteen years old and accompanied by her parents, went to Defendant to learn how to skydive. As part of the registration process, Makenzie executed a Registration Form and Medical Statement. Near the bottom of the document, Makenzie initialed a disclaimer which read:

> <u>I FURTHER UNDERSTAND THAT SKYDIVING AND GLIDING ARE VERY SERIOUS AND HAZARDOUS SPORTS IN WHICH I COULD SUSTAIN SERIOUS AND PERMANENT INJURIES OR EVEN DEATH</u>

Makenzie underwent an instruction course that included determining the condition of the parachute after deployment, gaining control and resolving any deployment problems and, if necessary, activating her emergency parachute. In connection with her registration and training, Makenzie and her parents both signed and/or initialed an accompanying document entitled "Agreement, Release of Liability and Acknowledgment of Risk" (the Release). The Release contained numerous exculpatory provisions, which stated in pertinent part:

> 1. RELEASE FROM LIABILITY. I hereby RELEASE AND DISCHARGE [Defendant] from any and all liability claims, demands or causes of action that I may hereafter have for injuries and damages arising out of my participation in parachuting and other aviation activities, including but

> limited to *LOSSES CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF THE RELEASED PARTIES.*
>
> 2. COVENANT NOT TO SUE. I further agree that *I WILL NOT SUE OR MAKE A CLAIM AGAINST [Defendant] for damages or other losses sustained as a result of my participation in parachuting and other aviation activities*.
>
> * * *
>
> 5. ACKNOWLEDGMENT OF RISK. I understand and acknowledge that parachuting activities have inherent dangers that no amount of care, caution, instruction or expertise can eliminate and I EXPRESSLY AND VOLUNTARILY ACKNOWLEDGE ALL RISK OF DEATH OR PERSONAL INJURY SUSTAINED WHILE PARTICIPATING IN PARACHUTING AND OTHER AVIATION ACTIVITIES *WHETHER OR NOT CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF THE RELEASED PARTIES, including but not limited to equipment malfunction from whatever cause or inadequate training.*
>
> * * *
>
> 9. ENFORCEABILITY. I agree that if any portion of this Agreement, Release of Liability and Acknowledgment of risk is found to be unenforceable or against public policy, that only that portion shall fall and all other portions shall remain in full force and effect. . . . *I also specifically waive any unenforceability or any public policy argument that I may make or that may be made on behalf of my estate or by anyone who would sue because of injury, damage or death as a result of my participation in parachuting and other aviation activities.*
>
> 10. LEGAL RIGHTS. It has been explained to me, and I expressly recognize that *this Agreement, Release of Liability and Acknowledgment of Risk is a contract pursuant to which I am giving up important legal rights, and it is my intention to do so*.

(Emphasis added).

Near the bottom of the form, Makenzie read and rewrote the following statement: "*I hereby certify that I have read this Agreement, Release of Liability and Acknowledgment of Risk, that I fully understand the contents of this contract, that I wish to be bound by its terms, and that I have signed this contract of my own free will*." This statement was signed and dated by Makenzie and initialed by her mother. At the bottom of the Release, under the heading, "RATIFICATION BY PARENT/GUARDIAN if participant is under 18-years-of-age," both parents attested that they had read the agreement, understood its terms, and agreed to be bound thereby.

Makenzie received four hours of training and instruction. She was assigned a used parachute based on her size and weight. Defendant employed the assistance of Jacob Martinez to act as radio controller. Mr. Martinez's duty was to help guide the jumpers onto the landing area and it was his first time to assist with the radio. Upon Makenzie's jump, her chute malfunctioned, causing her to spin with increasing rapidity towards the ground. Makenzie landed at a high speed and impact, causing her to sustain serious injuries.

**STANDARD OF DECISION**

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S.*

4

*Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, __ U.S. __, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

Defendant contends the Release absolves him from all liability for any injury suffered by Makenzie. Plaintiffs respond that Defendant's motion should be denied because (1) Makenzie was a minor when she signed the Release, rendering it invalid under Oklahoma law,[2] (2) Defendant is clearly liable under the theories asserted, and (3) this Court had a duty to protect Makenzie as a minor.

"An exculpatory clause releases in advance the second party for any harm the second party might cause the first party after the contract is entered." *Arnold Oil Properties LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206-07 (10th Cir. 2012) (citation omitted). While generally enforceable, such clauses are considered "*distasteful* to the law." *Schmidt v. United States*, 1996 OK 29, ¶ 8, 912 P.2d 871, 874 (emphasis in original).[3] Exculpatory clauses are enforceable only if they meet the three following criteria:

(1) Their language must evidence a clear and unambiguous intent to exonerate the would-be defendant from liability for the sought-to-be-recovered damages;

---

[2] In Oklahoma, a minor is any person under eighteen (18) years of age. 15 OKLA. STAT. § 13.

[3] Notwithstanding this admonition, courts should void contract clauses on public-policy grounds "rarely, with great caution and in cases that are free from doubt." *Union Pacific R. Co. v. U.S. ex rel. U.S. Army Corps of Engineers*, 591 F.3d 1311, 1321 (10th Cir. 2010) (quoting *Shepard v. Farmers Ins. Co*., 1983 OK 103, ¶ 3, 678 P.2d 250, 251).

> (2) At the time the contract was executed, there must have been no vast difference in bargaining power between parties; and
>
> (3) Enforcement of the clause would not (a) be injurious to public health, public morals or confidence in administration of the law or (b) so undermine the security of individual rights vis-a-vis personal safety or private property as to violate public policy.

*Schmidt*, 912 P.2d at 874. "The clause will *never* avail to relieve a party from liability for intentional, willful or fraudulent acts or gross, wanton negligence." *Id*. at 874 (citations omitted, emphasis in original); *Satellite System, Inc. v. Birch Telecom of Okla., Inc*., 2002 OK 61, ¶ 11, 51 P.3d 585, 589 ("Oklahoma has a strong legislative public policy against contracts which attempt 'to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another.'") (citing 15 OKLA. STAT. § 212).

Oklahoma courts, and others, have upheld exculpatory contracts similar to the present Release, i.e., contracts that exculpate the defendant from injuries suffered by plaintiffs while skydiving. *See Manning v. Brannon*, 1998 OK CIV APP 17, ¶¶ 15-17, 956 P.2d 156, 158-59 (exculpatory contract relieving defendant from any liability for injuries to plaintiff from parachuting activities was valid and enforceable); *see also Scrivener v. Sky's the Limit, Inc*., 68 F. Supp. 2d 277, 280 (S.D.N.Y. 1999); *Paralift, Inc. v. Superior Court*, 23 Cal.App.4th 748, 756, 29 Cal.Rptr.2d 177, 181 (1993); *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). This Court, likewise, finds the Release is generally valid on its face.

First, the Release states in clear and unequivocal terms the intention of the parties to excuse Defendant from liability caused by Defendant's negligence, equipment failure, or inadequate instruction. Plaintiffs signed and initialed several clauses containing the headings, RELEASE FROM LIABILITY, COVENANT NOT TO SUE, and ACKNOWLEDGMENT OF RISK. Mrs. Wethington and her husband signed a ratification stating they had read the Release, understood its terms, and agreed to be bound thereby. Second, there is no evidence of unequal bargaining power. "Oklahoma courts consider two factors in determining parties' relative bargaining power: '(1) the importance of the subject matter to the physical or economic wellbeing of the party agreeing to the release, and (2) the amount of free choice that party could have exercised when seeking alternate services.'" *Arnold Oil*, 672 F.3d at 1208 (quoting *Schmidt*, 912 P.2d at 874). There is no evidence that skydiving was necessary or important to Plaintiffs' wellbeing. In fact, when asked why she wanted to skydive, Makenzie answered, "It's on my bucket list." Moreover, Plaintiffs do not contend Makenzie had no choice but to agree to be trained by and jump with Defendant as opposed to going elsewhere. Third, as noted, Oklahoma courts have upheld such releases as not against public policy. *See Manning*, 956 P.2d at 159 ("we find a exculpatory contract in the context of a high-risk sport such as sky diving not against the public policy of this state.").

Plaintiffs nevertheless maintain the Release is voidable because Makenzie was a minor when she signed it and her subsequent suit disaffirmed the agreement. It is also true that as a matter of public policy, courts have protected minors from improvident and imprudent contractual commitments by declaring the contract of a minor is voidable at the election of the minor after she attains majority. *See* 15 OKLA. STAT. § 19. "A release is a contract." *Corbett v. Combined Commc'ns Corp. of Okla., Inc.*, 1982 OK 135, ¶ 5, 654 P.2d 616, 617. Under Oklahoma law, a minor's right to rescind a contract is *unaffected* by the approval or consent of a parent. *Gomes v. Hameed*, 2008 OK 3, ¶ 26, 184 P.3d 479, 489 (citing *Gage v. Moore*, 1948 OK 214, ¶ 8, 198 P.2d 395, 396).

In this case, however, Makenzie's parents also knowingly signed the Release on her behalf, ratifying and affirming its exculpatory content, and agreeing to be bound thereby. Nevertheless, Defendant refers this Court to no controlling authority that permits the parent of a minor to, on the minor's behalf, release or waive the minor's prospective claim for negligence. The Court is unaware of any such authority, and therefore must predict how the Oklahoma Supreme Court would rule on the question. *Ortiz v. Cooper Tire & Rubber Co.*, No. CIV-13-32-D, 2015 WL 1498713, at *5 (W.D. Okla. Mar. 31, 2015) ("A federal court sitting in diversity must apply state law as propounded by the forum's highest court. Absent controlling precedent, the federal court must attempt to predict how the state's

highest court would resolve the issue.") (quoting *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005)).

Although the cases are split on the issue, it is well-recognized that the majority of state courts considering the issue have held a parent may not release a minor's prospective claim for negligence. *See Fedor v. Mauwehu Council, Boy Scouts of Am.*, 143 A.2d 466, 467-68 (Conn. 1958); *Kirton v. Fields*, 997 So.2d 349, 356 (Fla. 2008) (pre-injury release executed by parent on behalf of minor is unenforceable against minor or the minor's estate in a tort action arising from injuries resulting from participation in a commercial activity); *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 386 (N.J. 2006) (New Jersey public policy prohibits parents of a minor child from releasing a minor child's potential tort claim arising out of the use of a commercial recreational facility); *Meyer v. Naperville Manner, Inc.*, 634 N.E.2d 411, 414 (Ill. App. Ct. 1994) ("[I]n the absence of statutory or judicial authorization, a parent cannot waive, compromise, or release a minor child's cause of action merely because of the parental relationship . . . . This rule has also been extended to render ineffective releases or exculpatory agreements for future tortious conduct by other persons where such releases had been signed by parents on behalf of their minor children."); *Galloway v. State*, 790 N.W.2d 252, 256 (Iowa 2010) (public policy precluded enforcement of parent's pre-injury waiver of her child's cause of action for injuries caused by negligence); *Doyle v.*

*Bowdoin College*, 403 A.2d 1206, 1208 n. 3 (Me. 1979) ("a parent, or guardian, cannot release the child's or ward's, cause of action."); *Childress v. Madison County*, 777 S.W.2d 1, 6-7 (Tenn. Ct. App. 1989); *Woodman v. Kera, LLC*, 760 N.W.2d 641, 655-56 (Mich. Ct. App. 2008) (pre-injury waivers effectuated by parents on behalf of their minor children are not presumptively enforceable); *Apicella v. Valley Forge Military Acad. & Junior Coll.*, 630 F.Supp. 20, 24 (E.D. Penn. 1985) ("Under Pennsylvania law, parents do not possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship."); *Munoz v. II Jaz Inc.*, 863 S.W.2d 207, 209-10 (Tex. App. 1993) (statute which empowered parents to make legal decisions concerning their child did not give parents power to waive child's cause of action for personal injuries); *Scott v. Pacific West Mountain Resort*, 834 P.2d 6, 11-12 (Wash. 1992) ("A parent does not have legal authority to waive a child's own future cause of action for personal injuries resulting from a third party's negligence").[4]

These decisions have invalidated such agreements on the grounds that (1) parents have no such power, or (2) the agreements violate public policy. The

---

[4] Of the cases enforcing pre-injury releases executed by parents on behalf of minor children, most involve state-enacted legislation permitting such waiver or the minor's participation in school-run or community-sponsored activities. *See, e.g., Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 874 (10th Cir. 2013); *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 1564, 274 Cal. Rptr. 647, 649-50 (1990); *BJ's Wholesale Club, Inc. v. Rosen*, 80 A.3d 345, 362 (Md. 2013); *Sharon v. City of Newton*, 769 N.E.2d 738, 746-47 (Mass. 2002); *Zivich v. Mentor Soccer Club, Inc.*, 696 N.E.2d 201, 205 (Ohio 1998).

underlying rationale employed by many is that courts, acting in the role as *parens patriae*, have a duty to protect minors. Oklahoma recognizes its duty to protect minor children. *Baby F. v. Oklahoma County District Court*, 2015 OK 24, ¶ 23, 348 P.3d 1080, 1088. In Oklahoma, a parent or guardian may not settle a child's claim without prior court approval. *See* 30 OKLA. STAT. § 4-702 ("A guardian, with the approval of the court exercising jurisdiction in the suit or proceeding, may compromise and settle any claim made by, on behalf of or against the ward in such suit or proceeding."). As aptly summarized by the Washington Supreme Court in *Scott*:

> Since a parent generally may not release a child's cause of action *after* injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action *prior* to an injury. In situations where parents are unwilling or unable to provide for a seriously injured child, the child would have no recourse against a negligent party to acquire resources needed for care and this is true regardless of when relinquishment of the child's rights might occur.

*Scott*, 834 P.2d at 11-12 (emphasis added).

Based on the case law in Oklahoma and other jurisdictions, the Court is led to the conclusion that (1) Makenzie's acknowledgment and execution of the Release is of no consequence and does not preclude her claims against Defendant, and (2) the Oklahoma Supreme Court would find that an exculpatory agreement regarding future tortious conduct, signed by parents on behalf of their minor children, is unenforceable. Accordingly, to the extent the Release purports to bar

Makenzie's own cause of action against Defendant, it is voidable. Plaintiffs correctly argue that commencement of this lawsuit constitutes a disaffirmance of the Release (*see, e.g., Gage, supra*; *Ryan v. Morrison*, 1913 OK 598, 135 P. 1049), and the contract is void *ab initio*. *Grissom v. Beidleman*, 1912 OK 847, ¶ 8, 129 P. 853, 857 ("The disaffirmance of a contract made by an infant nullifies it and renders it void ab initio; and the parties are returned to the same condition as if the contract had never been made."). The ratification signed by Makenzie's parents is likewise unenforceable as a bar to Makenzie's claims. The Release, however, is otherwise conspicuous and clear so as to bar *the parents'* cause of action based upon injury to their child. Therefore, Mrs. Wethington's causes of action, individually, are barred.[5]

## CONCLUSION

Defendant's Motion for Summary Judgment [Doc. No. 24] is **GRANTED IN PART and DENIED IN PART**. Defendant's motion is granted as to Plaintiff

---

[5] As noted, exculpatory clauses cannot excuse one for, *inter alia*, gross negligence. The statutory definition of gross negligence is "want of slight care and diligence." 25 OKLA. STAT. § 6. Under Oklahoma law, "gross negligence" requires the intentional failure to perform a manifest duty in reckless disregard of consequences or in callous indifference to life, liberty, or property of another. *Palace Exploration Co. v. Petroleum Dev. Co.*, 374 F.3d 951, 954 (10th Cir. 2004). Plaintiffs expressly plead in their Complaint only causes of action for negligence and breach of contract. Moreover, although Plaintiffs' Complaint seeks punitive damages based on Defendant's alleged "gross, willful, and intentional acts," Compl., ¶ 8, Plaintiffs neither argue nor present any evidence indicating Defendant's actions constituted anything beyond ordinary negligence.

Holly Wethington's claims and denied as to Plaintiff Makenzie Wethington's claim for negligence. Since the skydiving contract is rendered void *ab initio* by means of Makenzie's lawsuit, her breach of contract claim cannot proceed as a matter of law.

IT IS SO ORDERED this 18th day of December, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE